# Commonwealth v. Miller

*Christopher Jones,* for Commonwealth.
*Brandon Reish,* for defendant.

MARK, *J.,* January 7, 2008—

## SUPPLEMENTAL OPINION IN SUPPORT OF ORDERS PURSUANT TO Pa.R.A.P. 1925(a)

This matter comes before this court on Ricky Lee Miller's (defendant) appeal of the following orders: April 24, 2007 (order denying defendant's pretrial motion for dismissal for violation of Pa.R.Crim.P. 600 and the Interstate Agreement on Detainers Act (IAD), May 29, 2007 (bench trial verdict) and August 7, 2007 (sentencing order).

The basic history of this case is recited in our initial 1925(a) statement. In that opinion, we addressed the timeliness of the defendant's appeal and expressed our opinion that it was premature for the defendant to file an appeal while his pro se post-sentence motion was still pending before this court. See order dated November 8, 2007. We also advised that we had scheduled a hearing on the post-sentence motion.

After our initial 1925(a) opinion was issued, the defendant filed a motion seeking leave to proceed pro se, despite the fact that we had appointed new counsel to represent him. The defendant's new attorney filed a brief setting forth his position regarding the substantive and

procedural issues in the case. We now file this supplemental opinion to update the record, summarize our disposition of all motions filed after the defendant was sentenced, and recite our reasons for denying the defendant's pretrial motion to dismiss.

On December 7, 2007, the hearing on defendant's post-sentence motion was held as scheduled. In his pro se motion, the defendant asked this court to grant his request for a new trial based on both a sufficiency of evidence and a weight of evidence claim and because of a boilerplate claim of ineffectiveness of counsel.

At the hearing, presided over by the Honorable Jonathan Mark, defendant withdrew his motion to proceed pro se and Attorney Brandon Reish (appointed by this court on October 4, 2007) assisted the defendant throughout the proceeding. At the conclusion of the hearing, we denied defendant's motion in its entirety. Our reasons were fully stated on the record and were summarized in the denial order. The transcript of the December 7, 2007 hearing and the order denying the defendant's post-trial motion are included in the supplemental record and incorporated herein.

On January 3, 2008, defendant appealed our order denying his post-trial motion. Thus, there are at present two open appeals.

We still believe that the initial appeal filed by the defendant is premature and should be dismissed or quashed. We further believe that, since all post-trial issues that were ripe for determination (or appellate review) have now been decided, the appeal filed on January 3, 2008 should be considered the operative appeal. To cover all

bases, and because defendant will, in his second appeal, undoubtedly repeat his challenge to our pretrial ruling, we will address defendant's claim that we erred in denying his pretrial motion to dismiss.

Defendant argued that this court erred in denying his omnibus pretrial motion in that the Commonwealth failed to exercise due diligence in bringing the defendant to trial, in violation of his right to a speedy trial under the United States and Pennsylvania Constitutions and applicable laws and rules of criminal procedure Pa.R.Crim.P. 600, including the IAD, 42 Pa.C.S. §§9101-9108, and the Uniform Criminal Extradition Act (UCEA), 42 Pa.C.S. §§9121-9148.

In denying the defendant's omnibus pretrial motion, we were guided by *Commonwealth v. McNear,* 852 A.2d 401 (Pa. Super. 2004). The facts of the *McNear* case are strikingly similar to the facts of the instant matter. In *McNear,* the defendant argued that the trial court erred in dismissing his motion to dismiss for violating his right to a speedy trial under the United States and Pennsylvania Constitutions. In *McNear,* the defendant, on July 25, 2000, sold cocaine to an undercover police officer in Stroudsburg. A criminal complaint was filed against McNear on November 2, 2000, and an arrest warrant was issued on November 6, 2000. On December 8, 2000, after all attempts to locate the defendant failed, Detective Daniel Munch filed a wanted person form. On December 20, 2000, the National Crime Information Center notified Detective Munch that McNear was incarcerated in New Jersey. New Jersey authorities informed Detective Munch that the defendant would not be available for extradition until after he had served two sentences imposed in New Jersey. In June 2002,

New Jersey authorities informed Detective Munch that defendant was available for extradition.

We now address defendant's argument concerning the alleged violation of Rule 600. Rule 600, in pertinent part, provides as follows:

"*Rule 600. Prompt trial*

"(A)(2) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.
. . .

"(B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

"(C) In determining the period for commencement of trial, there shall be excluded therefrom:

"(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence; . . .

"(3) such period of delay at any stage of the proceedings as results from:

"(a) the unavailability of the defendant or the defendant's attorney;

"(b) any continuance granted at the request of the defendant or the defendant's attorney." Pa.R.Crim.P. 600.

Further, the comment to this rule indicates that:

"Under paragraph (C)(3)(a), in addition to any other circumstances precluding the availability of the defendant or the defendant's attorney, the defendant should be deemed unavailable for the period of time during which the defendant contested extradition, or a responding jurisdiction delayed or refused to grant extradition; or during which the defendant was physically incapacitated or mentally incompetent to proceed; or during which the defendant was absent under compulsory process requiring his or her appearance elsewhere in connection with other judicial proceedings." Pa.R.Crim.P. 600, comment.

Finally, in *McNear,* the Superior Court noted that

"The mechanical run date is the date by which the trial must commence under Rule 600. It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date." *McNear,* 852 A.2d at 406.

For purposes of reviewing a trial court's decision concerning Rule 600 issues, is whether the trial court abused its discretion. *Id.* Moreover,

"The proper scope of review in determining the propriety of the trial court's ruling is limited to the evidence on the record of the Rule [600] evidentiary hearing and the findings of the lower court. In reviewing the deter-

mination of the hearing court, an appellate court must view the facts in the light most favorable to the prevailing party. A criminal defendant who is incarcerated in another jurisdiction is unavailable within the meaning of Rule 600 if the Commonwealth demonstrates by a preponderance of the evidence that it exercised due diligence in attempting to procure the defendant's return for trial. Due diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.* at 404. (citations and quotation marks omitted) (alteration in original)

Applying these principles, the Superior Court in *McNear* concluded that the trial court did not abuse its discretion in dismissing defendant's motion to dismiss in light of the efforts Detective Munch put into seeking the defendant being extradited to Pennsylvania and the fact that New Jersey authorities denied extradition.

In the instant case, a Rule 600 evidentiary hearing was held on April 24, 2007. At the hearing, the Commonwealth presented credible testimony supporting the conclusion that the Commonwealth exercised due diligence in attempting to procure the defendant's return to Pennsylvania. Corporal Jennings of the Pennsylvania State Police (PSP) testified that he was the lead investigator in two separate robbery cases for which he filed charges against the defendant on November 23, 2004 and December 14, 2004. At the time of the filing of the charges, Corporal Jennings was aware that the defendant was incarcerated at the Warren County Correctional Center, New Jersey. Corporal Jennings sent a letter to

New Jersey authorities (Corporal Wright, Keeper of Records, Warren County Correctional Center) requesting that they accept as detainers the arrest warrants issued against the defendant in Pennsylvania for the two robberies. In that letter, Corporal Jennings also informed them that PSP was in the process of requesting extradition of the defendant to Pennsylvania. Corporal Jennings also testified that New Jersey authorities (Warren County Prosecutor's Office and the Warren County Correctional Center) informed him that they would not release the defendant until he had been sentenced on the charges he had pending at that time in New Jersey. Corporal Jennings finally testified that he would check periodically with New Jersey authorities on defendant's status.

In a conversation between Corporal Jennings and the New Jersey authorities on April 28, 2006, Corporal Jennings learned that the defendant had been sentenced in New Jersey on April 3, 2006 and that the defendant had been transferred to the Northern State Prison (New Jersey Department of Corrections). In May 2006, Corporal Jennings contacted the Classification Department of the Northern State Prison and told them that Monroe County was interested in bringing the defendant back to Pennsylvania. Corporal Jennings also asked the New Jersey authorities to inform the defendant of Monroe County's interest in bringing him to Pennsylvania and to suggest that the defendant initiate a prisoner-initiated IAD. Corporal Jennings never heard from the New Jersey authorities of any progress in a prisoner-initiated IAD. On cross-examination Corporal Jennings testified that the extradition process was not initiated because of the

refusal of the New Jersey authorities to release the defendant to the Commonwealth prior to the defendant being sentenced in New Jersey.

Trooper Holtsmaster of the PSP testified that he had investigated two robberies in Monroe County for which he filed charges against the defendant. He learned from Corporal Jennings that the defendant was incarcerated in New Jersey and that the defendant would not be available to the Commonwealth until after being sentenced in New Jersey. Upon learning that the defendant had been sentenced, Trooper Holtsmaster contacted the Monroe County District Attorney's Office to coordinate the transfer of the defendant to Monroe County. Trooper Holtsmaster learned that no transfer could be accomplished because the defendant had not executed the proper documentation. Moreover, it appeared that the defendant was not sure whether he wanted to be transferred to Monroe County. For these reasons, in August/September 2006, Trooper Holtsmaster started the process for extraditing the defendant to Monroe County.

While the extradition was pending, Trooper Holtsmaster learned on December 4, 2006, that the defendant voluntarily returned to Pike County (Pennsylvania) pending the adjudication of criminal charges filed in that county. Trooper Holtsmaster then requested a writ of habeas corpus ad prosequendum be issued to the Pike County Correctional Facility for the production of the defendant for the purpose of bringing him before a magisterial district judge in Monroe County. Said writ was issued on December 11, 2006. On December 13, 2006, the defendant was arraigned by Magisterial District Judge Germano and a preliminary hearing was scheduled for

December 20, 2006. At the December 20, 2006 hearing, the defendant requested to represent himself. As a result of the defendant's request, the preliminary hearing was rescheduled to determine the status of counsel. A hearing on the Commonwealth's motion to determine status of counsel was held on January 5, 2007, before the Honorable Ronald E. Vican. After hearing, Attorney James Gregor was appointed as counsel for the defendant. At the preliminary hearing held on January 10, 2007, all charges were bound to this court.

Ms. Carol Doss, the office manager of the Monroe County District Attorney's Office, testified that she was in charge of coordinating the IAD and that the district attorney's office received a letter (dated May 3, 2006) from the defendant on May 10, 2006, whereby the defendant provided the district attorney's office with information regarding his place of confinement and a request for final disposition. She testified that the district attorney's office received only that letter and that no other forms or documents were attached to it. She also testified that the defendant's request could not be properly addressed because the defendant did not provide the proper documentation in support of his request. In an effort to have it done correctly, she contacted the Northern State Prison approximately four times informing them that the defendant's request was not complete. Almost four months from the first time Ms. Doss contacted the Northern State Prison, it became clear that the district attorney's office would not be able to bring the defendant to this county through the IAD. She then started the extradition process, which was ultimately discontinued when the district attorney's office learned that the defen-

dant voluntarily returned to Pike County to respond to charges there.

Defendant testified that he sent a letter dated May 3, 2006, to the Monroe County District Attorney's Office asking for final disposition of the charges pending in this county. Defendant testified that he had been incarcerated in New Jersey since November 23, 2004. He also testified that, after he had been transferred to the Northern State Prison (New Jersey), he filled out all the paperwork for his return to Pennsylvania through the IAD. Defendant stated that he filled out forms for his return to Monroe County and Pike County. However, while he testified that he had a copy of the paperwork submitted for his return to Pike County, he was not able to provide any documentation in support of his statements concerning Monroe County. He also testified that he subpoenaed the official records from New Jersey's classification center, to no avail. Defendant testified that he asked his attorney to request the very same documentation. Defendant also testified that he was never asked to, or waived extradition to Pennsylvania, although he was willing to return to Pennsylvania.

On cross-examination the defendant admitted that he fought with the troopers on December 4, 2006 who went to New Jersey to take him to Pike County. He explained to the New Jersey authorities and the troopers that "he did not want to return to Pennsylvania at that time due to the fact I needed to see the governor's warrant or some kind of extradition paperwork." N.T., Rule 600 hearing, 04/18/2007, at 43. At closing, defendant's attorney expressly asked the court for some time so that the defendant could retrieve the paperwork relating to his formal

request for disposition in Monroe County. *Id.* at 46. The court addressed said request stating that "if you [defense attorney] want to submit something for me, if you could do that for me, please, by the end of the week for Mr. Miller. I'll leave the record open for that, and make sure [attorney for Commonwealth] gets a copy of it." *Id.* at 47. Defendant never provided any documentation supporting his claim.

In light of the efforts made by Corporal Jennings, Trooper Holtsmaster and Ms. Doss, and the refusal of the New Jersey authorities to surrender the defendant prior to him being sentenced in New Jersey, we found that the Commonwealth demonstrated by a preponderance of the evidence that it exercised reasonable due diligence in attempting to have the defendant released to Pennsylvania authorities. Therefore, we concluded that the time the defendant spent while under the auspices of New Jersey authorities was excludable for purposes of Rule 600. See *McNear, supra.*

Defendant also contends that the Commonwealth failed to bring him to Pennsylvania within the applicable statutory time frame under article III of the IAD.[1] We disagree. There is no evidence that the defendant complied with the requirements set forth in article III of the

---

1. There is no indication that the defendant argued that the Commonwealth failed to try the defendant pursuant to article IV of the IAD. At any rate, it appears that the 120-day period set forth in article IV was never triggered because there is no indication that the Commonwealth presented a written request for temporary custody or availability subsequent to filing the detainers (arrest warrants) against the defendant, pursuant to 42 Pa.C.S. §9101, article IV(a).

IAD. In particular, subsection (a) of article III clearly indicates that a defendant must be tried within 180 days of his having delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction: (i) a written notice of the place of his imprisonment, (ii) a request for a final disposition to be made of the indictment, information or complaint, and a (iii) certificate

"of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." 42 Pa.C.S. §9101, article III(a).

Subsection (b) of article III, requires that "the written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him." 42 Pa.C.S. §9101, article III(b).

The defendant sent a letter dated May 3, 2006, to the Monroe County District Attorney's Office in which he requested final disposition of the charges pending in Monroe County. However, he failed to comply with all other requirements set forth in article III of the IAD. As such, the May 3, 2006 letter alone never triggered the 180-day period within which the Monroe County authorities had to bring the defendant to trial. *Fex v. Michigan,* 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). Because the 180-day period was never triggered,

we do not determine whether there is excludable time pursuant to article VI[2] of the IAD.

The defendant finally argued that the Commonwealth failed to properly pursue all tools available to the Commonwealth (*i.e.,* UCEA and IAD) for bringing the defendant back to Pennsylvania. A similar claim was raised by the defendant in *McNear.* The Superior Court addressed the claim noting that:

"in view of the fact that the New Jersey authorities opposed extradition, the Commonwealth was not necessarily compelled to proceed under either the IAD or the UCEA, where to do so would no doubt have been fruitless. Therefore, the due diligence provisions under those Acts are not implicated in the present case, even tangentially." *McNear,* 852 A.2d at 407.

Similarly, we found that the New Jersey authorities opposed the release of the defendant to Monroe County prior to being sentenced in New Jersey. As such, it would have been fruitless to attempt to bring the defendant to Pennsylvania pursuant to either the IAD (assuming that it is applicable) or UCEA until the New Jersey authorities had sentenced the defendant.

---

2. Article VI(a) of the IAD provides that

"In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." 42 Pa.C.S. §9101, article VI(a).